# Illinois Official Reports

## Appellate Court

---

**_People v. Gladney_, 2020 IL App (3d) 180087**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DURAN K. GLADNEY, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-18-0087 |
| Filed | April 24, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 17-CF-556; the Hon. Kevin W. Lyons, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices Carter and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendant, Duran K. Gladney, appeals from his convictions for unlawful possession of a controlled substance and unlawful possession with an intent to deliver a controlled substance. The defendant argues he was denied his right to a fair trial because the Peoria County circuit court overruled his objections to damaging hearsay testimony.

¶ 2                                    I. BACKGROUND

¶ 3    The State charged the defendant by indictment with unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(d) (West 2016)), unlawful possession of a controlled substance (*id.* § 402(c)), and aggravated assault (720 ILCS 5/12-2(c)(1) (West 2016)). The defendant filed a motion to suppress evidence. The court denied the motion. Before the defendant's bench trial, the State dismissed the aggravated assault charge.

¶ 4    At trial, the State called Peoria police officer Austin Dixon to testify. On June 27, 2017, Dixon and his training officer were dispatched to Perry Avenue. The officers had received a report of an aggravated assault with a firearm. The report stated that, following the assault, the defendant, Trendal Harris, and a third male, left an apartment on Hightower Street and traveled toward Perry Avenue.

¶ 5    Dixon and the other officer found the men walking on Perry Avenue. Several other officers arrived at the location as Dixon and his training officer approached the men. Dixon had received information that one of the men might possess a firearm, and he and the other officers initiated the overhead lights on their patrol vehicles and drew their firearms. The officers ordered the men to lie on the ground. Two of the men complied with the order, and the defendant remained standing with his back to Dixon. Instead of getting on the ground, the defendant reached his hand into his jacket. When the defendant moved toward the ground, "other officers observed him passing a bag over to Harris." Defense counsel objected to the statement as hearsay. The court responded "[h]e's telling a conclusion that he's reached, so, and I think that would be an exception if in fact he did something as a result of that, so." Dixon placed the defendant in handcuffs and searched his person. Dixon did not find a firearm.

¶ 6    Sergeant David Cook and another officer placed the other two men in handcuffs. Cook handed Dixon a plastic grocery bag. Inside the bag were multiple bags containing a green, leafy substance and a white powdery substance. Dixon believed the white substance to be crack cocaine.

¶ 7    Harris testified that the defendant is his brother. Harris lived on Perry Avenue. On June 27, 2017, several police officers approached Harris while he was walking with the defendant. As the police approached, the defendant handed a cell phone to Harris and asked that he place it on a charger. At some point, the phone fell out of Harris's pocket. Harris said that the defendant never handed him a plastic bag.

¶ 8    During the State's direct examination, it asked Harris:

> "Q. Okay. So, when the police officer gets you on the ground and he says to you, I saw [the defendant] pass something to you, and asks you if that was true, you nodded yes. Do you remember doing that?

[DEFENSE COUNSEL]: Your Honor, I think that this is bringing in hearsay of what the officer said. I'm going to object to the question on the basis that it necessarily is going to have him basically testifying to hearsay of what the officer said to him.

THE COURT: Well, isn't she asking him a question that was asked of him?

[THE STATE]: Yes.

THE COURT: To get his response?

[THE STATE]: I'll go back and lay a little better foundation.

THE COURT: Is it the officer that was just testifying?

[THE STATE]: No, it's the next one.

THE COURT: Okay. Go ahead."

When the examination resumed, Harris said that the defendant did not hand him a plastic bag but handed him a cell phone. The State then asked:

"Q. So, when Officer Cook asked you—when Officer Cook reached into your pocket and pulled out a plastic baggy and asked you, is this what the defendant *** passed you, and you nodded yes and whispered yes, is that what you did? Is that what you said?

A. I was scared at the time.

[DEFENSE COUNSEL]: Objection. Hearsay. Even if he's testifying to his prior statement, it's still hearsay.

[THE STATE]: It's impeachment. I have to confront him with the statement.

THE COURT: She's first asking him whether he's done or said something. He's denied it. I think she's trying to lay—she laid a foundation to contradict what he said, but she has to, in order to have the officer testify about it, she has to first get a denial from the witness. So, in this specific instance, the objection is overruled.

***

[THE STATE]: So, what was your answer? Did you in fact say—nod your head yes and whisper yes when the officer asked if the baggy package was what had been passed to you? Did you nod your head yes and whisper yes to the officer?

A. I don't recall. I don't remember.

Q. I thought a minute ago you just said you did but you were scared?

A. Well, I was, but like, that was at the time.

Q. Okay. So you did nod your head and say yes when the officer asked you if that was what the defendant passed you?

A. Yes.

Q. And then did the officer in fact pull the rest of that package out of your pocket? It was a baggy, right?

A. Correct. Yes.

Q. Did you know what was in the baggy?

A. No."

¶ 9    Sergeant Cook testified that he assisted Dixon and several other officers in detaining and questioning three suspects. Cook drew his firearm as he exited his patrol vehicle because he had received information that one of the suspects might possess a firearm. Cook saw the

- 3 -

defendant hand something to Harris with a "[k]ind of a shovel with both hands to [Harris's] right side." Harris took the item and placed it in his right, front pocket. Following the transfer, Harris walked toward a home on Perry Avenue.

¶ 10    When Cook ordered Harris to lie on the ground, Harris stopped walking and got on the ground. Cook placed Harris in handcuffs and removed a plastic bag from Harris's right, front pocket. Cook asked Harris if the defendant had passed the bag to him. Harris "nodded and said yeah." Defense counsel objected to the statement as hearsay. The court overruled the objection noting that the State was perfecting its impeachment of Harris. The bag held multiple smaller plastic bags that contained apparent cannabis and crack cocaine.

¶ 11    The parties stipulated to the introduction of a laboratory report from the Illinois State Police Morton Forensic Science Laboratory. The report documented that the laboratory had received seven plastic bags that contained off-white chunks of an unspecified substance. The substance had a combined weight of 0.8 grams. Laboratory testing determined that the substance contained cocaine.

¶ 12    The defendant was the only witness called by the defense. Prior to his arrest, the defendant handed a cell phone to Harris as he walked toward Perry Avenue. The defendant told Harris to place the cell phone on a charger. When the police ordered the defendant to lie on the ground, he gestured with his hands to indicate that he did not understand why he needed to lie on the ground. The defendant denied possessing the bag that contained the narcotics. The State impeached the defendant's credibility with a certified copy of his 2014 conviction for aggravated robbery.

¶ 13    The court found the defendant guilty of both charges. The court specifically found the testimony regarding the cell phone handoff to be incredible and Cook's testimony to be "very credible and unimpeached."

¶ 14    The defendant filed a motion for a new trial. The motion contended that the State failed to prove the defendant's guilt beyond a reasonable doubt and the court had erred in denying a pretrial motion to suppress evidence. The court denied the motion.

¶ 15    The court sentenced the defendant to 180 days in jail and 30 months' probation. The defendant appeals.

¶ 16                    II. ANALYSIS

¶ 17    The defendant argues the court denied his right to a fair trial where it erroneously overruled defense counsel's objections to damaging hearsay testimony that indicated that the defendant passed a bag that contained narcotics to Harris. The defendant also contends that although he did not properly preserve this issue by raising it in his posttrial motion, this error is reversible under the first prong of the plain error doctrine because the evidence is closely balanced.

¶ 18    To preserve an issue for appellate review, a defendant must both object to the perceived error at trial and raise the error in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). An error that is not raised in a posttrial motion is deemed forfeited. *People v. McCarty*, 223 Ill. 2d 109, 122 (2006).

¶ 19    The plain error doctrine provides a limited and narrow exception to forfeiture. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). In addressing a claim of error under the plain error doctrine, we employ a two-part analysis. The first step in the analysis is to determine whether a " 'plain error' " occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007). The word

" 'plain' *** is synonymous with 'clear' and is the equivalent of 'obvious' " *Id.* at 565 n.2. If we determine that the court committed a clear or obvious (or "plain") error, we then must determine whether the error is reversible. Plain errors are reversible only when (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the error is "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* at 565. We first look at the errors alleged by the defendant to determine if they are "plain errors."

¶ 20 The defendant contends that the court erroneously admitted into evidence and considered hearsay testimony from Dixon and Cook. We review, *de novo*, questions of whether testimony constitutes hearsay, and we review the court's decision to admit the evidence for an abuse of discretion. *People v. Crowe*, 327 Ill. App. 3d 930, 936 (2002).

¶ 21 " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay evidence is generally inadmissible unless it falls within one of the recognized exceptions to the rule against hearsay. Ill. R. Evid. 802 (eff. Jan. 1, 2011); *People v. Caffey*, 205 Ill. 2d 52, 88-89 (2001). A police officer may generally testify about statements made to them by others, which explain why the officer took certain investigative steps. *People v. Pulliam*, 176 Ill. 2d 261, 274 (1997). These out-of-court statements are not considered inadmissible hearsay as long as they are offered to explain the officer's actions, and not to establish the truth of the matter contained in the statement. *People v. Sundling*, 2012 IL App (2d) 070455-B, ¶ 70. "However, if the substance of the matter would go to the very essence of the offense, the testimony is hearsay." *People v. Cordero*, 244 Ill. App. 3d 390, 392 (1993).

¶ 22 A. Dixon's Testimony

¶ 23 The defendant first argues that Dixon's testimony that "other officers" saw the defendant hand Harris a bag was hearsay and erroneously admitted at trial. The record establishes that this statement is hearsay. Dixon did not personally observe the transfer but reported what the other officers saw. The State elicited this testimony to prove "the truth of the matter asserted" that the defendant possessed and intended to deliver a bag containing narcotics to Harris. See Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); 720 ILCS 570/401(d), 402(c) (West 2016).

¶ 24 The State argues Dixon's statement was not hearsay because it was not offered to prove the truth of the matter asserted. Instead, Dixon's statement explained why he drew his firearm, handcuffed the defendant, and searched the defendant. However, the State's argument overlooks Dixon's testimony that before he and the other officers arrived on the scene, they had received a report that one of the suspects possessed a firearm and the suspects were alleged to have been involved in an aggravated assault with a firearm. This prompted Dixon to immediately draw his firearm upon arrival. Dixon also saw the defendant reach his hand into his jacket. These facts fully explained Dixon's actions and render the hearsay exclusion advanced by the State inapplicable. Therefore, Dixon's hearsay statement was a "plain error," and we must determine whether it is subject to reversal because the evidence is closely balanced.

¶ 25 To determine if the evidence is closely balanced, we must "evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the

case." *People v. Sebby*, 2017 IL 119445, ¶ 53. This review involves "an assessment of the evidence of the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 26 In this case, the defendant was charged with and convicted of unlawful possession with intent to deliver a controlled substance and unlawful possession of a controlled substance. To prove the unlawful possession with intent to deliver a controlled substance charge, the State needed to establish that the defendant possessed with an intent to deliver a substance containing cocaine. 720 ILCS 570/401(d) (West 2016). To prove the unlawful possession of a controlled substance charge, the State needed to establish that the defendant possessed a substance containing cocaine. *Id.* § 402(c)

¶ 27 After reviewing the record, we find that the evidence of the elements of both offenses was not close. Before making the hearsay statement, Dixon said that he saw the defendant reach his hand into his jacket. Like Dixon, Cook also saw the defendant reach for something. Cook then saw the defendant "shovel" an item toward Harris. Cook's search of Harris's person uncovered a plastic bag that contained several individual bags containing narcotics. In contradiction of defendant's theory of the case, neither officer testified that they found a cell phone. At the scene, Harris told Cook that the bag came from the defendant. While this fact was the subject of a credibility contest—Harris denied receiving the bag from the defendant but said that he told Cook at the scene that the bag came from the defendant—Cook's testimony impeached Harris's denial. Applying a commonsense analysis and looking at this evidence in context, we find that the evidence of the defendant's possession and intent to distribute the narcotics contained in the bags was not close. Therefore, Dixon's hearsay statement is not reversible plain error.

¶ 28 B. Cook's Testimony

¶ 29 The defendant next argues that Cook's testimony that Harris said that the defendant handed him the bag was inadmissible hearsay. We note that Cook's statement contradicted Harris's prior trial testimony denying that the defendant handed him the bag. Therefore, we must determine if Cook's statement is not hearsay because it is a prior inconsistent statement or was used to impeach Harris's testimony.

¶ 30 A prior inconsistent statement is not considered hearsay and is admissible as substantive evidence if it meets the requirements of Illinois Rule of Evidence 801(d)(1) (eff. Oct. 15, 2015).

> "(1) Prior Statement by Witness. In a criminal case, the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
>
>> (A) inconsistent with the declarant's testimony at the trial or hearing, and—
>> ***
>>
>> (2) narrates, describes, or explains an event or condition of which the declarant had personal knowledge, and
>>> ***
>>>
>>> (b) the declarant acknowledged under oath the making of the statement either in the declarant's testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought or at a trial, hearing, or other

proceeding, or in a deposition[.]" Ill. R. Evid. 801(d)(1)(A)(2)(b) (eff. Oct. 15, 2015).

See also 725 ILCS 5/115-10.1(c)(2)(B) (West 2016); *People v. Cruz*, 162 Ill. 2d 314, 359 (1994) (plurality opinion). Alternatively, a witness's prior inconsistent statement may be admitted to impeach a witness's credibility. *People v. Wilson*, 2012 IL App (1st) 101038, ¶ 38; see also Ill. R. Evid. 607 (eff. Jan. 1, 2011). "[T]he credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of affirmative damage." *Id.* When the State impeaches its own witness with a prior inconsistent statement, it "must show that the witness's trial testimony affirmatively damaged its case." *Wilson*, 2012 IL App (1st) 101038, ¶ 44 (citing *Cruz*, 162 Ill. 2d at 360). "The testimony must do more than merely disappoint the State by failing to incriminate defendant; the testimony must give 'positive aid' to the defendant's case." *Id.*

¶ 31    In this case, Harris first asserted that the defendant handed him a cell phone. Harris made no mention of the bag that contained the narcotics. The State then elicited testimony from Harris that, at the scene, he told Cook that the defendant handed him the bag that contained the narcotics. Harris's prior inconsistent statement was properly admitted as substantive evidence under Rule 801. However, immediately following Harris's prior inconsistent statement, Harris attempted to explain the inconsistency by asserting that he was "scared" at the time that he made the statement. This set up Cook's impeachment testimony regarding his exchange with Harris. Cook said that when he asked Harris if the plastic bag came from the defendant, Harris nodded and said "yes." This impeached Harris's statement that the defendant did not hand him the bag. See Ill. R. Evid. 607 (eff. Jan. 1, 2011). This impeachment was permitted because Harris's testimony affirmatively damaged the State's case. The State was required to prove that the defendant possessed and delivered narcotics to another individual. Until Cook's testimony, the only properly admitted evidence of the defendant's possession and intent to deliver came from Harris's inconsistent statements. Harris's inconsistency plus his explanation of the at-the-scene statement discredited the State's case and supported the defense theory of the case that the defendant handed Harris a cell phone instead of a bag. Due to this affirmatively damaging testimony, the State properly impeached Harris's testimony by introducing additional evidence of Harris's statement to the police through Cook's testimony.

¶ 32    The defendant argues that Cook's testimony did not "perfect impeachment" because Cook's testimony was an inadmissible prior consistent statement and it prejudicially bolstered Harris's testimony that he indicated at the scene that the defendant gave him the bag. The defendant's argument would impermissibly defeat the purpose of the rule on prior inconsistent statements: to "prevent 'a turncoat witness' from merely denying an earlier statement when that statement was made under circumstances indicating it was likely to be true." *People v. Thomas*, 354 Ill. App. 3d 868, 882 (2004). Limiting prior inconsistent statement impeachment to the introduction of a single inconsistent statement would allow a witness, after the substantive admission of the inconsistent statement, to deny either of the other prior statements without a risk that those statements would be admitted as substantive evidence. *People v. White*, 2011 IL App (1st) 092852, ¶ 53. This scenario played out in the present case as Harris both denied receiving the bag from the defendant and attempted to explain away his prior inconsistent statement following its substantive admission. Therefore, Cook's testimony regarding Harris's statement at the scene was excepted from hearsay as a prior inconsistent

statement admitted to impeach Harris's testimony and is not a "plain error."

¶ 33                                  III. CONCLUSION

¶ 34            The judgment of the circuit court of Peoria County is affirmed.

¶ 35            Affirmed.