**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190535-U

Order filed November 23, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0535 Circuit No. 18-CF-555 |
| | ) | |
| JERWAYNE MOORE, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and Wright concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's aggravated battery conviction was upheld because the trial court did not abuse its discretion in admitting into evidence a second gun provided by defendant to the shooter when defendant was convicted on the basis of accountability. The trial court also did not abuse its discretion in allowing a detective to narrate the surveillance camera footage for the jury.

¶ 2     The defendant, Jerwayne Moore, appealed his aggravated battery conviction.

¶ 3                                          I. BACKGROUND

¶ 4    Quadrix Brown was shot in the leg at a gas station on September 2, 2018, by Makai Jordan. The defendant and Jordan were arrested on September 6, 2018, and they both were charged with aggravated battery. At the time of his arrest, Jordan had in his possession a gun with a purple handle and extended clip ("the purple gun"), which was different than the weapon used to shoot Brown.

¶ 5    Brown testified that he and the defendant were first cousins and were about the same age, early thirties, while Jordan was younger, around 19 years old. Brown testified that he had heard that the defendant and Jordan were the individuals who had recently broken into Brown's house and stolen several televisions. Brown and the defendant had words about the stolen televisions, and they even had a physical altercation a few days before the shooting. On the night of the shooting, Brown arrived at the gas station, and the defendant and Jordan were already there. The defendant and Jordan started talking "smack" right away, but Brown went into the store. The video from inside the store shows Brown paying for gas and cigarettes, and then saying, "I'm fittin' to go beat this n***r's a***." When Brown came out of the store, he walked across the street toward the defendant and Jordan and there were some words exchanged. There was also some pushing, and a couple of blows exchanged between Brown and the defendant. Brown testified that when he turned around to leave, he heard the defendant say, "pop his a***." Brown looked back, and Jordan was holding a gun. Jordan fired the gun, hitting Brown in the back of Brown's left leg on the second shot.

¶ 6    Detective Matt Mocilan testified that he was a Peoria police officer, and he was the detective in charge of investigating the shooting of Brown. After speaking to Brown in the hospital on September 4, 2018, Mocilan reviewed the surveillance video from the gas station. The defense stipulated to the foundation and had no objection to its admission. Mocilan testified that he was

familiar with Brown, Jordan, and the defendant by the time he reviewed the video. As a portion of the video, from a camera inside the gas station, was played for the jury, Mocilan testified that the video showed Jordan and the defendant at the gas station before Brown arrived. Mocilan identified the defendant as the person wearing a red hat with a black bill, a white t-shirt, jeans that were white at the bottom, and dark shoes, and Mocilan identified Jordan as the person wearing a white t-shirt, jeans, and white shoes. The jury was then shown a portion of the video from a camera outside of the gas station, and Mocilan narrated the video as it was played for the jury. Mocilan identified the defendant and Jordan as the two figures in the middle of the street. Defense counsel objected saying there were just two white blobs on the screen. The shooting was not captured on the video because it occurred outside the frame of any of the cameras. The trial court admonished the jury that it was the dispositive fact finder, and the video clips were to be used as an aid to give them a point of reference.

¶ 7        Jordan testified that he was 18 years old and serving a sentence in the Illinois Department of Corrections for the aggravated battery of Brown. Jordan testified that he had a .45-caliber handgun with him on the night of September 2 that he bought from an unknown crackhead about a month before the shooting. Jordan admitted that he had told Mocilan that the defendant gave Jordan the .45-caliber handgun. Jordan testified that he was mad at the defendant at the time, so he lied to Mocilan. At trial, Jordan also testified that the defendant did not know that Jordan had a gun and did not tell Jordan to shoot Brown. Jordan admitted, though, that he had told Mocilan that the defendant told Jordan to shoot Brown. When questioned about the inconsistent testimony, Jordan testified that he lied in the interrogation. Jordan denied ever receiving guns from the defendant, but he was then questioned regarding the purple gun that Jordan had in his possession when he was arrested. At the time of the arrest, Jordan told Mocilan that the defendant had given

3

Jordan the purple gun. Jordan again testified at trial that he lied in the interrogation. The purple gun was admitted into evidence over the defendant's objection.

¶ 8 The defendant was found guilty of aggravated battery under a theory of accountability, a Class X felony, and sentenced to 11 years in prison. The defendant appealed.

¶ 9 II. ANALYSIS

¶ 10 A. Admission of the Purple Gun

¶ 11 The defendant argues that the trial court abused its discretion by admitting the purple gun into evidence because it was extrinsic evidence of a collateral crime that was not relevant to the aggravated battery offense. The collateral crime was that the defendant provided a gun to Jordan, who was too young to legally purchase a gun. The defendant further contends that the purple gun primarily served the purpose of showing that the defendant had a propensity for crime and its admission misled the jury. The State contends that the purple gun was properly admitted as evidence of the defendant's knowledge, intent, and accountability and for the purpose of demonstrating that Jordan was most likely lying in his recantation at trial. The State argues that if there was any error, it was harmless.

¶ 12 Evidentiary rulings are within the sound discretion of the trial court and are reviewed for an abuse of that discretion. *People v. Larke*, 2018 IL App (3d) 160253, ¶ 18. "An abuse of discretion occurs only where the trial court's ruling is 'arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Lerma*, 2016 IL 118496, ¶ 23 (quoting *People v. Rivera*, 2013 IL 112467, ¶ 37).

¶ 13 Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Relevant evidence is generally

4

admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, if it confuses the issues, or if it misleads the jury. Ill. R. Evid. 403 (eff. Jan. 1, 2011); *People v. Sardin*, 2019 IL App (1st) 170544, ¶ 100.

¶ 14    The defendant does not challenge the admissibility of Jordan's prior inconsistent statements as evidence. In fact, Jordan's prior inconsistent statements that the defendant had provided Jordan with the .45-caliber handgun and told Jordan to shoot Brown, and had then provided Jordan with the purple gun, were properly admitted as substantive evidence. See Ill. R. Evid. 801(d)(1)(A) (eff. Oct. 15, 2015); 725 ILCS 5/115-10.1 (West 2018); *People v. Gladney*, 2020 IL App (3d) 180087, ¶ 30. The defendant argues that the purple gun itself should not have been admitted into evidence.

¶ 15    Although the purple gun was not the weapon used to shoot Brown, it was found on Jordan's person four days after the shooting. The State argued that it was provided to Jordan by the defendant, and that the defendant regularly supplied guns to Jordan, so the defendant knew Jordan was armed when the defendant told Jordan to shoot Brown. While evidence of a defendant's other criminal offenses is generally not admissible if offered to show the defendant's bad character or propensity to commit crime, it is admissible for other purposes, such as intent, identity, motive, knowledge, plan, or absence of mistake. *People v. Pikes*, 2013 IL 115171, ¶ 11; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). As with other relevant evidence, the judge may exclude the other-crimes evidence if its prejudicial effect outweighs its probative value. *People v. Illgen*, 145 Ill. 2d 353, 365 (1991).

¶ 16    In this case, there is no question that Jordan shot Brown, so the defendant was convicted of aggravated battery under a theory of accountability. The purple gun was relevant to prove that

the defendant provided Jordan with guns for the defendant's protection, so the defendant knew that Jordan was armed at the time of the Brown shooting. See *People v. Bartall*, 98 Ill. 2d 294, 312 (1983) (subsequent criminal acts by the defendant can be admissible to show knowledge or intent in the crime charged). We find that the trial court did not abuse its discretion in determining that the probative value of the purple gun was not substantially outweighed by the danger of unfair prejudice. If there was any error in admitting the purple gun into evidence, in light of the admissibility of Jordan's prior inconsistent statements and Brown's testimony, the error was harmless. See *People v. Johnson*, 406 Ill. App. 3d 805, 818-19 (2010) (improper admission of other-crimes evidence was harmless error where it had no prejudicial effect on jury's verdict).

¶ 17    The defendant argues on appeal that the trial court could have mitigated the prejudicial effect of other-crimes evidence if it had admonished the jury as to how the evidence was to be received, and it was error not to give an instruction limiting consideration of the purple gun to the issues of intent and knowledge. While we agree that giving the instruction, both when evidence is admitted and with the jury instructions, is the best practice, the trial court had no obligation to *sua sponte* give the instruction. *People v. Maya*, 2017 IL App (3d) 150079, ¶ 94. The defendant did not request any admonishment at the time the evidence was offered, did not tender Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000), and did not raise the issue in a posttrial motion. Thus, the defendant has waived the issue for review. See *People v. Herron*, 215 Ill. 2d 167, 175 (2005). The failure to give such a limiting instruction, where the State's argument made clear that the purple gun was offered as evidence that the defendant provided guns to Jordan, was not such a substantial defect as to overcome that waiver. See Ill. S. Ct. R. 451(c) (eff. July 1, 2006).

¶ 18                                B. Surveillance Video

6

¶ 19    The defendant argues that Mocilan should not have been allowed to narrate the events on the surveillance video because it amounted to inadmissible lay opinion testimony. The defendant contends that this was error and seeks plain error review since the error was not preserved in the trial court. The State contends that Mocilan's identification was proper lay witness testimony because it was helpful to the jury and based on Mocilan's personal knowledge. Also, the State argues that the evidence was not closely balanced because the defendant's identity was never at issue.

¶ 20    We begin our plain error review by considering whether an error occurred at all. Under Illinois Rule of Evidence 701 (eff. Jan. 1, 2011), lay witness identification testimony is admissible if it is rationally based on the perception of the witness and it is helpful to a clear understanding of the witness's testimony or a determination of a fact at issue. *People v. Thompson*, 2016 IL 118667, ¶ 50. Such testimony is helpful if there is some basis to conclude that the witness is more likely to correctly identify the defendant from the surveillance recording than the jury. *Id.* As noted above, the admissibility of evidence at trial is reviewed for an abuse of discretion. *Larke*, 2018 IL App (3d) 160253, ¶ 18.

¶ 21    The defendant argues that Mocilan had no better basis than the jury to identify the defendant on the video. The defendant contends that there was no evidence that Mocilan had any familiarity with the defendant, other than Mocilan learned who the defendant was before viewing the surveillance footage. The State contends that Mocilan's testimony was helpful to the jury because Mocilan could describe what was happening on the clips of the video that were presented to the jury, based on Mocilan's viewing all of the surveillance footage. Also, Mocilan had familiarized himself with the defendant, Brown, and Jordan before viewing the video.

7

¶ 22　　　　Reviewing the record, we find no abuse of discretion in allowing Mocilan to narrate the surveillance video clips shown to the jury, especially considering the fact that the defendant's identity was not at issue in the case. Mocilan testified that he was familiar with the defendant, Brown, and Jordan prior to viewing the surveillance video. Also, Mocilan had the opportunity to review the entire surveillance footage, which included multiple camera angles. Mocilan's testimony was an aid to the jury, but, as the jury was admonished, it was the dispositive fact finder and it could draw its own conclusions from the video.

¶ 23　　　　The defendant contends that the trial court erred because it failed to engage in precautionary procedures outlined in *Thompson*, 2016 IL 118667, ¶ 59, before allowing Mocilan to narrate the video. We find that any error in admitting this testimony is harmless. Brown testified that he heard the defendant tell Jordan to shoot. Jordan's prior statements to the police corroborated this. Critically, the defendant's identification was not at issue in the case, so any identification testimony by Mocilan did not threaten to tip the scales of justice. See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 24　　　　　　　　　　　　　　　III. CONCLUSION

¶ 25　　　　The judgment of the circuit court of Peoria County is affirmed.

¶ 26　　　　Affirmed.