2024 IL App (2d) 230469-U
No. 2-23-0469
Order filed August 6, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-1007 |
| MICHAEL E. STONER, | ) ) | Honorable D. Christopher Lombardo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Despite defendant's various challenges to the victim's credibility, the trial court was within its prerogative as fact finder in rejecting some of the victim's testimony while accepting enough to support a conviction of two counts of domestic battery, especially given the evidence corroborating that portion of her testimony.

¶ 2    Following a bench trial in the circuit court of Lake County, defendant, Michael E. Stoner, was found guilty of two counts of domestic battery. On appeal, defendant argues that the testimony of the complaining witness was not credible and, therefore, the State failed to prove his guilt beyond a reasonable doubt. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    Defendant, a former Gurnee police officer, was indicted on two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a), (a-5) (West 2018)) (counts I and II), a single count of aggravated battery (*id.* § 12-3.05(a)(1)) (count III), and two counts of domestic battery (*id.* § 12-3.2(a)(1), (a)(2)) (counts IV and V).  Count I alleged that, on April 3, 2018, defendant pushed Lea Colon, causing great bodily harm.  Count II alleged that, on November 2, 2019, defendant blocked Colon's nose or mouth with the intent of impeding her normal breathing.  Count III alleged that, on April 3, 2018, defendant pushed Colon, causing great bodily harm.  Count IV alleged that, on November 2, 2019, defendant struck Colon, causing bodily harm.  Count V alleged that, on November 2, 2019, defendant made contact of an insulting or provoking nature by striking Colon. The aggravated domestic battery charges (counts I and II) and simple domestic battery charges (counts IV and V) alleged that Colon was a family or household member of defendant.

¶ 5    Before trial, the trial court granted the State's motion to introduce defendant's prior uncharged physical abuse of Colon on July 26, August 26, and September 26, 2017.  The court also ruled that defendant was permitted to cross-examine Colon on whether she falsely told defendant that she was pregnant and whether, for a time, she engaged in a charade of being pregnant.

¶ 6    At trial, Colon testified that defendant was her former boyfriend.  They met in 2016 and dated for about four years.  About eight months after Colon and defendant started dating, she and her son Tyler moved in with defendant at his home in Winthrop Harbor.  Also living with them was Siena, defendant's daughter with his ex-wife Alicia.  Between 2018 and 2019, Colon worked for the Glenview police department while training at a law enforcement academy to be an officer.

¶ 7    Colon testified that, in the morning or afternoon of April 3, 2018, she and defendant were home, conversing about parenting issues.  No one else was home.  The conversation became

heated, and defendant started to yell, curse, and scream in Colon's face. He grabbed both of her wrists and dragged her to the staircase. He then swung her, trying to throw her down the stairs. Colon fell two or three steps, twisted her left knee, and heard a "pop" from her left knee. She immediately felt extreme pain in that knee and began screaming. Colon identified a text message from defendant stating, "I want you to know if you go to a [doctor], I will pay anything that the insurance will not cover[.] I'm sorry[.]" Colon received the message on the day of the accident or the next day.

¶ 8    The State introduced photographs Colon testified she took on or about April 3, 2018. Three of the photographs were of her legs. Colon took those photographs to show redness and swelling of her left knee, the size difference between her knees, and an abrasion on her right knee. The fourth photograph was of a packaged knee brace in what appeared to be a store display. Colon testified that she purchased the knee brace, but defendant sent her the photograph of it.

¶ 9    Colon sought treatment for her knee at the Illinois Bone and Joint Institute (IBJI) on April 18, 2018. She explained that she delayed seeking treatment because defendant was concerned about repercussions if it was discovered that he had injured her. Colon told one of the doctors at the IBJI that she injured her knee on April 3, 2018, while playing basketball. Before the appointment, defendant told Colon what to tell the doctor. When Colon spoke with the doctor, defendant was in the room, wearing his police uniform.

¶ 10    Colon testified that, on November 2, 2019, her relationship with defendant had been deteriorating and they had been talking about separating. That day, they were in their bedroom, discussing how to divide their property. Tyler and Siena were also home. During the conversation, defendant became angry. He yelled and cursed at Colon, who was sitting on the bed, and said he was going to suffocate her. He pushed her back on the bed, got on top of her, and covered her

nose and mouth with his hands. Colon could not breathe for at least 30 seconds. When defendant got off her, she tried to stand. Defendant told her he would not let her leave until he finished with her. He then shoved her back down on the bed and repeatedly pressed her face into the bed, causing pain. When she tried to get up again, he shoved her against a wall, closed the bedroom door, and slapped her face with his open hand. That same day, after the incident, Colon photographed her arm and face. She intended to document (1) red marks on her inner arm that she sustained when defendant shoved her against the wall and (2) red marks and swelling on her face. The photographs were admitted into evidence.

¶ 11　Colon also testified about several uncharged incidents. On July 26, 2017, she and defendant were home and had an argument that became physical. Tyler was also home at the time. According to Colon, defendant pushed her down, dragged her, held her down, and squeezed and slammed her arms against the floor. When she got up and started walking down the stairs, he pushed her. She fell half the flight, injuring her knee and sustaining a "butt bruise." The State introduced photographs that she had taken that day. She identified injuries to her wrist, knuckles, arm, knee, and thigh.

¶ 12　On August 26, 2017, Colon and defendant were home, arguing over discipline for Tyler. The argument became physical. Defendant pushed her down and got on top of her. He dragged her around the living room by "[b]oth [her] hands and [her] legs at different points." He also kicked the back of her legs several times and attempted to choke her. She photographed herself that day or the day after. In the photographs, which the State introduced, she identified injuries to several parts of her body. Because she was "threatened," Colon did not report the incident or seek medical treatment for her injuries.

¶ 13    On September 26, 2017, defendant and Colon argued about how defendant and his former wife, Alicia, coparented Siena. Defendant got upset when Colon took Alicia's side. The argument became physical, and defendant pushed Colon's arms up against the wall. He squeezed her arms as he held them. When she tried to free herself, defendant slammed her against another wall. She suffered injuries to her arm and wrist. The next day, she photographed the injuries. The State introduced the photographs.

¶ 14    Colon recalled an occasion in 2019 when, because of some dispute with defendant, she was late for class at the law enforcement academy. She testified that defendant instructed her to falsely advise the academy that she was late because her child was ill. She did as he instructed.

¶ 15    Colon testified that her relationship with defendant ended in 2020. In November 2019, when they were in the process of separating, she told defendant that she was pregnant. She also sent him a sonogram and "a text that showed [her] taking an at-home pregnancy test." For about two months, Colon sincerely believed that she was pregnant. After learning that she was not pregnant, she lied and continued to tell defendant that she was pregnant. She explained that she lied because she believed she needed defendant in her life and she hoped he would stay if he believed she was pregnant.

¶ 16    Colon testified that, in March 2020, she reported to Winthrop Harbor detective Chris Willets that defendant had physically abused her. She produced several written statements for Willets.

¶ 17    On cross-examination, Colon testified that she did not recall speaking with her best friend about any of the incidents involving defendant except the incident in November 2019. Colon acknowledged that the floors in the house she shared with defendant were carpeted. She further acknowledged that, although she testified that defendant dragged her across the floor on April 3,

2018, the photographs she took of herself shortly after the incident do not show rug burns. She testified that the November 2, 2019, incident occurred after 7 p.m. However, she acknowledged telling Willets that the incident occurred at 3 p.m. The August 26, 2017, incident also occurred at night, but Colon told Willets it occurred about 12:30 p.m.

¶ 18 Colon admitted that, after lab results showed that she was not pregnant, she altered the results to indicate that she was pregnant and sent them to defendant. The sonogram she sent defendant was from a "prank" website. She also admitted that she asked defendant to take her to an abortion clinic. Defendant took her to the clinic but waited in his car during the appointment. At some point, she contacted Alicia and lied to her, too, about being pregnant. Colon contacted Alicia because they "had a friendship."

¶ 19 Colon further admitted that she looked at messages on the defendant's phone at some point during their relationship. She became upset after learning that defendant was communicating with other women. She downloaded from defendant's phone deleted photographs of other women. Colon admitted that she told her best friend that she wanted to ruin defendant's life and wanted him to lose his job. However, Colon also admitted to her friend that she (Colon) was responsible for the failure of her relationship with defendant.

¶ 20 On redirect examination, Colon testified that she did not seek medical treatment in connection with the August 26, 2017, incident, because defendant "made it very clear that he would kill [her] and [her] son if it was ever to be found out that he verbally and physically abused [her]."

¶ 21 Tyler, born on December 19, 2008, testified that Colon and defendant argued frequently while living together. Tyler recalled an occasion when defendant and Colon argued sometime after dinner. Tyler was in his bedroom. When he went to see what was happening, he observed

defendant pulling Colon down the stairs. Colon stumbled down a few steps but did not fall. Tyler recalled that he was in fourth grade when he observed that incident.

¶ 22    After Tyler testified, the State rested. Defendant moved for a directed finding on counts I (aggravated domestic battery) and III (aggravated battery). Defendant argued that the State produced no evidence of great bodily harm to Colon. The trial court agreed and granted the motion for counts I and III.

¶ 23    The defense called Alicia. She testified that she and defendant were married from 2010 to 2015. Defendant was never "physical" with her, and he was a wonderful father. After Colon's relationship with defendant ended, Colon contacted her to discuss "the demise of their relationship." Colon and Alicia had not previously discussed Colon's relationship with defendant. Colon and Alicia never discussed any abuse.

¶ 24    Defendant's stepmother, Diana Stoner, testified that defendant was very kind and became a police officer to help people. Diana described three similar incidents that occurred between April and August 2018. On each occasion, she and defendant's father, Ed Stoner, received a telephone call from defendant asking them to come to his house. Diana heard Colon screaming in the background. When they arrived at defendant's house, Colon had locked herself in the bedroom, and defendant had scratches on his chest.

¶ 25    Diana testified that she and Ed also received a call from defendant in November 2018 asking them to come over. Colon had again locked herself in the bedroom. Defendant told his parents that he "just want[ed] [Colon] to go and she wouldn't." Diana further testified that, at some point during defendant's relationship with Colon, she heard Colon tell defendant that if he ever left her, she would ruin his life.

¶ 26    Defendant testified that he was a former Gurnee police officer. He became a police officer in 2012. He had a good relationship with Alicia, who was "[p]robably one of [his] closest friends." In 2016, his relationship with Colon became "very toxic." They argued frequently, and the arguments became "physical," with Colon pushing, hitting, slapping, and punching defendant. Defendant did not recall seeing any bruises on Colon's arm in July 2017. As to the August 26, 2017, incident that Colon described, defendant testified that he asked Colon on that date about comments a male law enforcement officer had left on Colon's social media posts. She became agitated and defensive. She balled her fist and clenched her jaw, which defendant recognized from experience as a sign that she was angry and about to become violent. She then slapped and pushed defendant.

¶ 27    In mid-to-late October, defendant and Colon were breaking up, which defendant had initiated against Colon's wishes. On November 2, 2019, as defendant and Colon discussed dividing their property, defendant noticed Colon exhibit signs of agitation—tapping her pen and clenching her jaw. At some point, Colon "shoulder checked" defendant, and a verbal argument ensued. Defendant denied that he put his hands on Colon, slapped her, hit her, pinned her to a bed or wall, or choked her.

¶ 28    Colon eventually moved out of defendant's home, but she contacted him repeatedly to reconcile. In December 2019, Colon informed defendant that she was pregnant. Defendant later received what looked like a lab result and sonogram confirming the pregnancy. Defendant accompanied Colon to an abortion clinic but waited in the car. On cross-examination, defendant acknowledged that, on November 2 or 3, 2019, he became annoyed at Colon for clenching her jaw and told her that he wanted to punch it.

¶ 29    During closing argument, defense counsel contended essentially that Colon's desperation to save her relationship with defendant, and her commensurate anger at his breaking it off, motivated her to falsely accuse him of physically abusing her. The trial court, declining to consider Colon entirely discredited, partially accepted her testimony. The court was troubled by Colon's failure to contemporaneously report defendant's physical abuse. In the court's view, that failure likely impeded evidence collection. However, the court noted that Colon's injuries were documented in her contemporaneous photographs. The court rejected defendant's testimony that he never saw her bruises. Although the court noted that Colon's elaborate effort to falsify a pregnancy detracted from her credibility, the court found that her testimony (corroborated by Tyler and the photographs) that defendant pushed her down the stairs was sufficient proof that defendant made contact with Colon that was insulting or provoking and caused her bodily harm. In contrast, the court did not find beyond a reasonable doubt that defendant impeded Colon's breathing. Accordingly, the court found defendant guilty of counts IV and V but not guilty of count II.

¶ 30                                    II. ANALYSIS

¶ 31    Defendant argues that Colon's testimony was not credible and, therefore, was insufficient to prove his guilt beyond a reasonable doubt. In reviewing a challenge to the sufficiency of the evidence in a criminal proceeding, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Generally, "a reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). The trier of fact's credibility determinations are not sacrosanct, but

they will not be disturbed on appeal unless against the manifest weight of the evidence. *People v. Bishop*, 2024 IL App (2d) 230106, ¶ 54. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17.

¶ 32    Defendant argues that the trial court's finding that Colon was credible on critical points was against the manifest weight of the evidence because she (1) reviewed text messages on defendant's phone without his permission and downloaded deleted photographs of women, (2) lied to defendant about being pregnant, (3) lied to medical personnel that her knee injury was from playing basketball, (4) lied about the reason for being late to a class at the law enforcement academy, (5) told others that she wanted to ruin defendant's life, (6) did not contemporaneously report defendant's abusive conduct, and (7) was impeached with prior inconsistent statements about what time of day the offenses occurred.

¶ 33    We fail to see how Colon's admission that she looked at text messages and downloaded content from defendant's phone bears on the credibility of her testimony. We note that Colon's statement to medical personnel attributing her knee injury to basketball was potentially admissible for impeachment purposes as a prior inconsistent statement (though the statement was elicited by the State and not used to impeach Colon). See *People v. Gladney*, 2020 IL App (3d) 180087, ¶ 30 ("a witness's prior inconsistent statement may be admitted impeaching a witness's credibility"). However, defendant identifies other untruthful statements by Colon that were not inconsistent with her trial testimony. Specifically, defendant notes that Colon testified that she lied about being pregnant and about her reason for being tardy for her academy class. Presumably, the State elicited the pregnancy lie in anticipation that defendant would raise the matter on cross-examination as the trial court's pretrial ruling allowed.

¶ 34    Generally, the fact that a witness has lied on previous occasions about matters unrelated to the charges against the defendant is not grounds for impeaching the witness's testimony. *People v. Smith*, 21 Ill. App. 3d 366, 375 (1974). In other words, such evidence is not admissible simply to establish a proclivity for lying. Colon's testimony that she lied about the reason for being late to class is just such evidence. The pregnancy lie, however, was indeed relevant to the defense's theory that Colon accused defendant of crimes as revenge for his ending their relationship. However, that evidence did not undermine Colon's credibility so definitively that the trial court's choice to accept some of her testimony was against the manifest weight of the evidence. Colon's statements that she wanted to ruin defendant's life likewise support the defense theory but are hardly conclusive evidence that she acted on that desire and fabricated such serious allegations. Moreover, the trial court's rejection of Colon's testimony that defendant impeded her breathing does not affect our conclusion. "[T]he trier of fact is free to accept or reject as much or as little as it sees fit of a witness'[s] testimony." *People v. Porter*, 277 Ill. App. 3d 194, 200 (1995).

¶ 35    Turning to the evidence of Colon's failure to contemporaneously report defendant's physically abusive conduct, we note that the significance of that evidence would appear to be governed by the principles pertaining to silence as a prior inconsistent statement.

> "[I]t is permissible to use prior silence to discredit a witness's testimony if (1) it is shown that the witness had an opportunity to make a statement and (2) the witness fails to mention a fact under circumstances that make it reasonably probable that he or she would have mentioned them if true. [Citation.]" *People v. Miller*, 2017 IL App (1st) 143779, ¶ 43.

Here, there was evidence that, despite the violence she was enduring, Colon was determined to preserve her relationship with defendant. Under these circumstances, we cannot say that it was reasonably probable that she would report defendant's physical abuse. Finally, minor

discrepancies about the time of day when the incidents occurred is an insufficient basis to disturb the trial court's credibility determination.

¶ 36 Of course, any consideration of Colon's credibility must acknowledge the evidence corroborating her account: the contemporaneous photographs of her injuries and Tyler's testimony that he witnessed defendant pull Colon down the stairs. Given the totality of the evidence, we cannot say that the trial court's decision to credit Colon's testimony in part was against the manifest weight of the evidence. We conclude that a rational trier of fact could have found defendant guilty of counts IV and V beyond a reasonable doubt.

¶ 37                    III. CONCLUSION

¶ 38 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 39 Affirmed.